### PEOPLE v. CONE.

(Supreme Court, Trial Term, Kings County. December, 1900.)

GAME LAW—CLOSED SEASON—PROHIBITION OF POSSESSION.
    The fisheries, game, and forest law (section 105), forbidding trouts to "be fished for, caught, killed or possessed" during the closed season, does not apply to fish caught outside of, and brought into, the state.

Action by the people against Charles H. Cone to recover a penalty for a violation of the game law. Judgment for defendant.

Elmer G. Samis, for plaintiff.

Frank Harvey Field, for defendant.

GAYNOR, J. This is an action to recover the penalty prescribed for a violation of section 105 of the fisheries, game and forest law in exposing trouts for sale during the close season. The trouts were not caught in this state, but were imported from the state of Massachusetts, where they were caught in lawful season.

The statute forbids that trouts shall "be fished for, caught, killed or possessed" during such close season (section 105). The defendant objects, first, that the prohibition against possessing relates only to trouts caught in this state; and, second, that if it also relates to imported trouts, it is void for infringing on that provision of the constitution of the United States which vests in the congress of the United States the power "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." As to the first objection, following the history and intent of similar legislation, and the judicial construction of a similar statute, the word "possessed" in the present statute must be deemed to refer to imported

trouts as well as to those caught in this state, and to prohibit having trouts in one's possession at all in the close season. Phelps v. Racey, 60 N. Y. 10. Nor is the second good if the decision in the case above cited is still law. It is claimed that it has been overruled by the decisions in such cases as Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128, and Schollenberger v. Pennsylvania, 171 U. S. 1, 18 Sup. Ct. 757, 43 L. Ed. 49. This does not seem to me so, though they do cut from under it a main part of the opinion of the court in rendering it, viz., that in the absence of legislation by the national congress regulating a particular matter of interstate or foreign commerce a state may legislate thereon. But none of those cases presents the same facts as Phelps v. Racey. It is easy to build up a specious and imposing argument by quoting extracts from judicial opinions; but it has always to be remembered that such extracts are not binding as authority, for the actual decision alone is authoritative, and that only within the precise facts of the case. Failure to follow this rule is responsible for much prolixity and confusion. State statutes prohibiting the sale of imported oleomargarine or alcoholic and malt liquors (which were presented by the two cases last cited) are very different to the present statute. They directly prohibit the sale of commodities conceded to be free articles of commerce, which is plainly outside the power of state legislatures; whereas the present statute deals with a subject concededly within such power. The only question is whether it goes beyond the subject. It may indirectly and incidentally affect interstate and foreign commerce without being open to the charge of usurping the power of the national congress to regulate such commerce, the same as an act may indirectly affect property rights, or the use and value of individual property, without being open to the charge of violating the constitutional guarantee against taking private property without compensation and due process of law, whereas an act directly doing the like would be violative thereof.

That animals feræ naturæ, i. e., game, have always been public property, i. e., owned in common by all, and therefore subject to government control in respect of their protection and preservation, which embraces the time, place, extent and manner of their being killed or caught and reduced to individual ownership, is too familiar to need citation of authority. The subject has always belonged to the police power of the state everywhere from ancient times down to now; and that it belongs in this country to the several states, and not to the national government, is a thing not to be disputed. It being thus within state legislative province, it follows that whatever the state legislature necessarily enacts in the way of such regulation for the protection and preservation of game ought not to be deemed a regulation of interstate and foreign commerce, and a trespass upon the said exclusive power of the national legislature to regulate the same, and I believe it cannot be. It is a thing too well established by experience to be open to fair dispute, that the prohibition against selling game at all in the close season is necessary to such statutes in order to make them effective, i. e., by preventing a general evasion of them. The present statute is not an infringement on the said power

of the national congress to regulate commerce. It is concededly on a subject of proper and necessary state legislation; and it is not extended beyond bounds necessary to make such legislation enforcible and effective.

On reargument the following memorandum was written:

Since writing the foregoing the decision in People v. Buffalo Fish Co., 164 N. Y. 93, 58 N. E. 34, has been rendered. The prevailing opinion is (1) that the prohibition against possessing trouts relates only to trouts caught in this state, and (2) that if such prohibition is to be understood to be against the possessing of trouts imported from other states or countries it is in violation of the said constitutional provision against the regulation of commerce. Three judges concur with the judge writing the opinion on the former ground, while only two of them concur on the latter ground also. The decision must therefore be interpreted as overruling the decision in Phelps v. Racey on the former ground, and leaving it still the law of the state on the latter. The statute construed in Phelps v. Racey was that "no person shall kill or expose for sale, or have in his or her possession after the same has been killed, any quail" between specified dates. The prohibition there against possessing was identical with the prohibition in the statute construed in the Buffalo Fish Co. Case and in the present case; in fine, they were then and are now different sections in identical language in the same statute, the only difference being that one concerns birds and the other fishes. The opinion in Phelps v. Racey says that the language of the statute "is plain and unambiguous," and that "hence there is no room for construction"; but though the prevailing opinion in the Buffalo Fish Co. Case does not mention the exactly contrary decision in the former case, the later decision must be deemed as overruling the former.

Judgment for the defendant.